**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:18-cv-0170

MICHAEL C. TRIMARCO,

Plaintiff,

v.

CHARLES E. (CHASE) ERGEN, III, also known as Charles Edwards, and also known as M. Charles E. (Chase) Ergen,

Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, CROSS-MOTION FOR ALTERNATIVE SERVICE AND AN EXTENSION OF TIME TO PERFECT SERVICE**

---

Plaintiff Michael C. Trimarco ("Plaintiff" or "Trimarco") opposes the motion of defendant Charles Edwards f/k/a Charles E. (Chase) Ergen, III ("Defendant" or "Edwards") to quash service and dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), or, in the alternative, moves this Court to issue an Order; (i) authorizing substituted service, as is allowed by Colorado Rule of Civil Procedure 4(f); and (ii) extending time to perfect service under Fed. R. Civ. P. 4(m).

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.L.Civ.R.7.1, on March 23, 2018, Howard Kleinhendler, Esq., counsel for Trimarco, conferred with counsel for Edwards regarding the relief requested herein. Counsel for Edwards refused.

## I. INTRODUCTION

Edwards admitted wrongdoing, and to satisfy Trimarco's damages, executed a $60 million

note in favor of Trimarco at 5% annual interest. That note became due and payable in 2017 and, despite demand, Edwards has yet to pay Mr. Trimarco. Rather than uphold his contractual obligation, Edwards has shamelessly attempted the coward's way out: he claims to be out of reach of this Court's jurisdiction. More specifically, Edwards' motion to dismiss Trimarco's collection effort is grounded in his claim that service of the Summons and Complaint upon him was defective, and the Court lacks personal jurisdiction over him.

First, as is prima facie established by the process server's affidavit of service, Edwards confirmed his identity to the process server and was personally served in-hand with both the Summons and Complaint. Edwards' uncle's, Christopher McAdam ("McAdam"), contrary allegation that he, not Edwards, accepted service, is insufficient to overcome process server's sworn return. Second, the evidence clearly and unequivocally demonstrates that the address where service was made on January 30, 2018, had been Edwards' residence for many years, and continues to be his "usual place of abode." It is also the address where Edwards' six-year-old daughter resides. Accordingly, even if fifty-six-year-old McAdam received the Summons and Complaint, personal service was still effected upon a family member of Edwards, who is over eighteen years old, at Edwards' abode.

Nevertheless, assuming arguendo Edwards is a nonresident, his extensive contacts with the State of Colorado empower this Court to adjudicate the instant dispute. Edwards' wrongdoing, underlying this dispute, occurred in Colorado. Edwards has additionally founded multiple Colorado corporations, and is a majority shareholder and agent of many others. Edwards further maintains a substantial trust account in Colorado. These are precisely the types of contacts that give rise to general jurisdiction and, at a minimum, specific jurisdiction. The Court should deny Edwards' motion to quash and dismiss.

## II. BACKGROUND

Trimarco marketed and distributed DISH Netowrk Corp. ("Dish Network") satellite television services. (Compl. ¶¶ 6,7.) While doing so, he developed a close relationship with its founder and former CEO, Charles William Ergen ("Ergen"). (Compl. ¶ 8.) Ergen is Edwards' father. (Compl. ¶ 8.) Ergen encouraged Trimarco to mentor and go into business with Edwards. (Compl. ¶ 8.) Accordingly, in 2010, Edwards and Trimarco formed CH Communications S.A. ("CH Communications") with the intent and purpose of marketing and distributing Dish Network globally. (Compl. ¶ 9.) Edwards is an "agent and major shareholder/trustee" of Colorado entities DishNetwork LLC ("DishNetwork") and EchoStar LLC. (Declaration of Michael Trimarco sworn to March 28, 2018 (the "Trimarco Decl.") Ex. A, Settlement Agreement ¶ 6.) The DishNetwork board of directors formally approved and ratified the venture with CH Communications. (Trimarco Decl. ¶ 4.)

In about April 2011, Edwards moved to Mongolia, which harmed CH Communications and Trimarco. (Compl. ¶ 12.) At that same time, Trimarco discovered that Edwards had acted in ways that were harmful to both Trimaco and CH Communications. Also in 2011, Edwards began acting in ways that frustrated the purpose of CH Communications. (Compl. ¶ 13.) About one year later, in March 2012, Edwards admitted to Trimarco that he had engaged in a multiple year conspiracy together with executives of DishNetwork to defraud, defame and slander Trimarco, to wrongfully terminate contracts made with Trimarco and entities he controlled, and to wrongfully convert business opportunities from Trimarco. (Compl. ¶ 14.)

Following Edwards' admissions, he and Trimarco entered into a settlement agreement dated April 2012 whereby Edwards agreed to pay Trimarco $60,000,000 (the "Settlement Amount") in exchange for mutual releases (the "Settlement Agreement"). (Compl. ¶ 15.; Trimarco

Decl. Ex. A.) In lieu of a cash payment of this amount, Edwards and Trimarco entered into a loan agreement dated April 27, 2012 (the "Loan Agreement"), in which Edwards agreed to pay Trimarco the Settlement Amount by May 1, 2017 (the "Loan"), with interest accruing at 5% per year. (Compl. ¶ 16.; Compl. Ex A.) The Loan Agreement further provides that, if Trimarco has to engage lawyers to collect the Settlement Amount, Edwards is responsible to pay an additional attorneys' fee of 1% of the unpaid balance. (Compl. ¶ 17.) Additionally, the Loan Agreement provides that payments beyond 90 days of the due date are subject to a late charge of 1% of the unpaid balance. (Compl. ¶ 18.)

The Loan matured on May 1, 2017, with the full Settlement Amount due and owing, plus interest and late fees. (Compl. ¶ 20.) Trimarco demanded that Edwards pay the full amount, but he refused. (Compl. ¶ 20.) Trimarco brought this action to recover the Settlement Amount on January 22, 2018, filing a summons and complaint (the "Summons and Complaint"). (Dkt. 1.)

On January 30, 2018, process server, Patrick Aragon III, served Edwards at his place of abode, 5330 Lakeshore Drive, Littleton, County of Araphoe, CO 90123 (the "Lakeshore Drive Address"). (Affidavit of Patrick Aragon, III, ¶ 3 sworn to March 20, 2018, (the "Aragon Aff.").) Aragon's professional duties regularly include service of process under the Federal Rules of Civil Procedure. (Aragon Aff. ¶ 2.) The recipient of Summons and Complaint identified himself to Aragon as "Charles Ergen." (Aragon Aff. ¶ 3.) The recipient of the Summons and Complaint further did not deny being Edwards. (Aragon Aff. ¶ 5.) Mr. Aragon would not have served the Summons and Complaint had the recipient advised that he was not Edwards. (Aragon Aff. ¶ 6.) Finally, Mr. Aragon never advised the recipient that he could not bring the Summons and Complaint back to his office. (Aragon Aff. ¶ 7.)

On February 20, 2018, Edwards filed the instant motion to quash service and to dismiss

arguing that this Court lacks personal jurisdiction over him, and that his fifty-six-year-old uncle, Christopher McAdam ("McAdam") was the actual recipient of the Summons and Complaint. (Dkt. 14.) Edwards provided the affidavit of McAdam in support of his motion. (Dkt. 14.) In his affidavit, McAdam swears "to [his] knowledge" that the Lakeshore Drive Address is Edwards' parents' address and his childhood home, but that Edwards has not lived at that address for more than 10 years, and that in 2012 he moved "abroad". (Dkt. 14-1.)

Thereafter, Trimarco made additional inquiries relating to Edwards. In 2017, Chase appeared at a court hearing in Colorado to testify in support of his mother, Cantey Ergen's continued custody of his daughter Luna. (Trimarco Decl. ¶ 13.) Public records indicate that Edwards is registered to vote in the State of Colorado. (Trimarco Decl. ¶ 15 Ex. D.) Additionally, public records indicate that Edwards founded multiple corporations including entities called Mr. & Mrs. Nice Guy and Mrs. Nice Guy. (Trimarco Decl. ¶ 14 Ex. C.) Edwards' six-year-old daughter resides at Lakeshore Drive Address and Edwards visits her there. (Trimarco Decl. ¶¶ 11-12.) Edwards also maintains in Colorado a trust account worth several hundred million dollars. (Trimarco Decl. ¶ 16.)

## III. <u>ARGUMENT</u>

### A. Defendant's Motion to Quash Return of Service Should Be Denied

#### 1. Defendant Was Personally Served With Both the Summons and Complaint

A plaintiff may effect personal service by delivering a summons and complaint to the defendant, personally, or by "leaving a copy thereof at the [defendant's] usual place of abode, with any person who is eighteen years or older and who is a member of the person's family." C.R.C.P. 4. Personal service upon a defendant present in the State of Colorado confers personal jurisdiction and renders a minimum contacts analysis inapplicable. <u>O'Brien v. Eubanks</u>, 701 P.2d 614, 616

(Colo. App. 1984) (proper personal service upon defendant present in Colorado obviated minimum contacts analysis).

If a defendant challenges the sufficiency of service, the plaintiff bears the burden of proving that proper service was effected. See Frederick v. Hydro-Aluminum S.A., 153 F.R.D. 120, 123 (E.D. Mich. 1994). The affidavit of service is prima facie evidence of valid service. See, e.g., Taft v. Donellan Jerome, Inc., 407 F.2d 807, 808–09 (7th Cir. 1969); Dittimus v. Bond, No. 12-CV-03010-MSK-KMT, 2013 WL 4496432, at *2 (D. Colo. Aug. 22, 2013). As such, the affidavit of service imports a verity that "can only be overcome by strong and convincing evidence." Hicklin v. Edwards, 226 F.2d 410, 414 (8th Cir. 1955); Cleaves v. Funk, 76 F.2d 828, 829–30 (10th Cir. 1935). See also Trustees of Local Union No. 727 Pension Fund v. Perfect Parking, Inc., 126 F.R.D. 48, 52 (N.D. Ill. 1989) ("Affidavits submitted by defendants which merely deny service are not sufficient" to overcome a sworn return of service); FROF, Inc. v. Harris, 695 F. Supp. 827, 829 (E.D. Pa. 1988) (sworn return of private process server cannot be rebutted by "a bare allegation" that service was improper).

Affidavits sworn with the qualifying language "to my knowledge" suggest that the affiant has not met the personal knowledge requirement of the either the Colorado or Federal Rules of Civil Procedure. See Rose Marie L. Fiore, Affidavit Evidence: Heightened Scrutiny Due to Robo-Signing, ABA Business Torts Litigation, (Summer 2012)("qualifying statements, however, such as 'to my knowledge'… cause confusion when assessing whether the personal-knowledge requirement is satisfied"). Furthermore, "factual disputes at this initial stage must be resolved in the plaintiff's favor when the parties present conflicting affidavits." FROF, Inc., 695 F. Supp. at 829; See also Ten Mile Indus. Park v. W. Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir. 1987). Additionally, a recipient of process' deliberate attempt to trick a process server by falsely

identifying himself is evidence of evasion of service. See Kenworthy v. Van Zandt, 71 Misc. 2d 950, 953, 337 N.Y.S.2d 481, 483 (Civ. Ct. 1972).

When a plaintiff has made a prima facie showing of proper service and a defendant has not presented sufficient evidence to warrant an evidentiary hearing, the court may dismiss the challenge on the affidavits and other evidence submitted by the parties. See, e.g., Fed. Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992).

**a. Defendant Was Personally Served In-Hand the Summons and Complaint**

Here, Patrick Aragon III's sworn affidavits reflect that Edwards accepted service of a copy of the Summons and Complaint at his Lakeshore Drive Address at about 8:57 p.m. on January 24, 2018. Aragon's professional duties regularly include service of process under the Federal Rules of Civil Procedure, and he has sworn under penalty of perjury that he delivered copies of both the Summons and the Complaint to Edwards. Edwards has failed to provide "strong and convincing evidence" capable of overcoming Trimarco's prima facie showing of proper service. Edwards only offers the affidavit of his uncle, McAdam. McAdam's swore that he accepted service, not Edwards. As demonstrated below, McAdam's affidavit is problematic and directly conflicts with the Aragon Affidavit. See FROF, Inc., 695 F. Supp. at 829.

At this stage in the litigation, this conflict should be resolved in Trimarco's favor. See id. The conflict suggests that McAdam deliberately misidentified himself to Aragon, evidence of Edwards' attempt to evade service. See Kenworthy, 71 Misc. 2d at 953. Finally, because Edwards was personally served in-hand within the State of Colorado, Colorado courts have personal jurisdiction over him without having to engage in a minimum contacts analysis. See O'Brien, 701 P.2d at 616.

**b. At a Minimum, Defendant Was Personally Served at His Place of Abode**

The phrase "usual place of abode" as used in the Federal Rules "should be construed liberally to effectuate service where actual notice of suit has been received by defendant." Rovinski v. Rowe, 131 F.2d 687 (6th Cir. 1942). A defendant may have more than one "place of abode." Old Republic Nat. Title Ins. Co. v. Kornegay, 2012 COA 140, 292 P.3d 1111, 1116 (quoting Black's Law Dictionary 1423 (9th ed. 2009)). In Rovinski, personal service was effected at the home of the defendant's mother in Michigan, where the defendant had resided until 1929. Rovinski, 131 F.2d at 688. It was not disputed that the defendant had actually received notice of the action, or that the defendant had not resided at his mother's home for more than a decade. Id. at 688–89. In an affidavit, the defendant stated that his work in the maritime trades kept him away from his mother's home in Michigan, that he had lived continuously in Duluth, Minnesota for the past two years, and that he had returned to his mother's home "only to visit her." Id. Notwithstanding the Sixth Circuit's conclusion that the defendant was a resident of Wisconsin, id. at 688, the Court held that the home of the defendant's mother in Michigan was his "usual place of abode" for purposes of service. Id. at 689.

Furthermore, even if a person has moved from a residence and has no intention of returning, that address will continue to be the person's "usual place of abode" if members of that person's family remain behind and the person has not established a more permanent address. In Karlsson v. Rabinowitz, 318 F.2d 666 (4th Cir. 1963), the Fourth Circuit upheld service on the defendant's former residence in Maryland, despite the defendant's permanent move to Arizona. The defendant had obtained a new job in Arizona, was planning to move his family there, and was living at a hotel while a new family home was built. Id. at 667. His wife and children remained in Maryland until sale of their house there was completed and the family's belongings could be shipped to

Arizona. Id.

Additionally, a defendant with a "mobile" or "transitory" lifestyle cannot cause him to avoid service by claiming that he has no usual place of abode, or that his usual place of abode is a temporary residence where he happens to be on a given date. In Campbell v. Bartlett, 975 F.2d 1569 (10th Cir. 1992), for example, the court upheld service on a truck driver at his sister's home, finding that the defendant had sometimes lived there between driving jobs, had lost his last known permanent residence due to a foreclosure, and had failed to demonstrate that he maintained a more permanent residence or that service elsewhere was more desirable. Id. at 1575. See also First Nat. Bank & Tr. Co. of Tulsa v. Ingerton, 207 F.2d 793 (10th Cir. 1953) (where itinerant race horse owner regularly stayed at a hotel between races and received her mail there, the hotel was her usual place of abode); Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253 (2d Cir. 1991) (defendant's New York apartment was his usual place of abode, despite uncontested claim that he spent most of his time at other residences in Saudi Arabia and Europe).

A defendant's failure to disclose his current whereabouts or to show that he has another "dwelling house or usual place of abode" is significant and underscored by the Tenth Circuit's decision in Rosa v. Cantrell, 705 F.2d 1208 (10th Cir. 1982). The defendant in Rosa departed from his home in Rock Springs, Wyoming, prior to service of the summons and complaint in a wrongful death action, but his wife and son remained behind. The wife informed the process server that she had not seen her husband for some time and did not know where he was, even though he called their son occasionally to talk. In holding that service was valid, the court observed:

> in the present case it is important to note that the defendant had not been gone for a long period of time and there was no basis for inferring that he had established a place of residence at some other place. He merely said that this was no longer his abode and that is not enough ... The presence of his family in Rock Springs certainly carries a good deal of weight in that it supports a conclusion that the

> Truman Street house was his usual place of abode, particularly in view of the fact that he had been gone for such a short time and was very likely seeking to avoid service

Rosa, 705 F.2d at 1216 (emphasis added).

The only evidence Edwards offered to overcome Trimarco's prima facie showing of proper in-hand service is a problematic affidavit signed by his uncle, McAdam. McAdam swears that he, not Edwards, was served. Even assuming arguendo the truth of McAdam's allegation, personal service was still effected. Specifically, Edwards does not deny that he received actual notice of the dispute, but instead argues through McAdam that the Lakeshore Drive Address was not his "place of abode" because he allegedly has not lived there for more than ten years, and that he left the United States. (McAdam Aff. ¶¶ 7, 8.) Rather than submit an affidavit of someone with actual knowledge, Edwards relies on the qualified affidavit of his uncle to purportedly show the Lakeshore Drive Address, his admitted childhood home, was not his place of abode.

First, McAdam's allegations concerning Edwards' abode and whereabouts were unreliably made only "to [his] knowledge." (McAdam Aff. ¶¶ 7, 8.) Accordingly, they should not be relied upon by the Court in deciding this dispute and, as such, do not provide "strong and convincing" evidence that the Lakeshore Drive address is not Edwards' place of abode for service of process. Second, even if McAdam's allegations that Edwards has not lived at the Lakeshore Drive Address for more than ten years, or that he lives abroad, were reliable, they do not preclude the Lakeshore Address from being Edwards "abode" for the purpose of service of process. See Rovinski. Notably, Edwards' only biological child, his six-year-old daughter resides at the Lakeshore Drive Address, and Edwards regularly sees her there. As in Karlsson, this is sufficient to establish the Lakeshore Drive Address as Edwards' abode.

Further, at best, the allegations in McAdam's affidavit do not refute the possibility that

Edwards simply lives a "mobile" or "transitory" lifestyle, which does not divest the Lakeshore Drive Address from qualifying as Edwards' abode. See Campbell; see also Karlsson, 318 F.2d 666. Finally, Edwards makes significant notable omissions in his motion to dismiss that demonstrate that he is seeking to evade service. See Rosa, 705 F.2d at 1216. Specifically, Edwards is silent on his current whereabouts, the residence of his daughter at the Lakeshore Drive Address, and that he is registered to vote in Colorado. See id.

Assuming the veracity of McCadam's unqualified allegations, at a minimum, Aragon personally served Edwards by leaving the Complaint at his abode with his fifty-six-year-old uncle, a family member, who is over eighteen. (McAdam Aff. ¶¶ 2, 3.)

### B. This Court Has Personal Jurisdiction Over Edwards, Even if Edwards Was Not Served In-Hand

In a diversity action, jurisdiction over a nonresident defendant is determined by the law of the forum state. Wenz v. Memery Crystal, 55 F.3d 1503, 1506 (10th Cir. 1995) (citing Fed. R. Civ. P. 4(e)). An analysis of whether personal jurisdiction exists is two-pronged. Id. at 1506–07. First, the court must determine whether the exercise of jurisdiction comports with the Colorado long-arm statute. Id. The court must then determine whether the exercise of personal jurisdiction satisfies the requirements of the Due Process Clause. Id. at 1507.

"Although the plaintiff bears the burden of establishing personal jurisdiction over defendant, in the initial stages of litigation, this burden is 'light.'" Intercon, Inc. v. Bell Atl. Internet Sols., Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting Wenz, 55 F.3d at 1505) (internal citations omitted). Where there has been no evidentiary hearing and the existence of personal jurisdiction is based on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction. Wenz, 55 F.3d at 1505; see also Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). In

considering whether the district court may exercise personal jurisdiction over a defendant, all of the plaintiff's factual allegations must be accepted as true "to the extent they are uncontroverted by the defendant's affidavits." Wenz, 55 F.3d at 1505. All factual disputes must be resolved in favor of the plaintiff. See OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

**1. Edwards Has Sufficient Minimum Contacts With Colorado to Satisfy the Requirements of the Due Process Clause and Support Personal Jurisdiction Over Edwards**

Colorado's long-arm statute is construed liberally to allow jurisdiction to the full extent permitted by due process. See, e.g., Day v. Snowmass Stables, Inc., 810 F. Supp. 289, 291 (D. Colo. 1993). Therefore, if jurisdiction is consistent with due process, Colorado's long-arm statute authorizes jurisdiction over a non-resident defendant. See Custom Vinyl Compounding, Inc. v. Bushart & Assocs., Inc., 810 F. Supp. 285, 287 (D. Colo. 1992). "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." OMI Holdings, Inc., 149 F.3d at 1090 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)) (internal quotations omitted). Courts have recognized that the requirements of due process are satisfied if there are minimum contacts between the defendant and the forum state. Id. at 1090 (quoting World-Wide Volkswagen Corp., 444 U.S. at 291).

The minimum contacts requirement may be satisfied in one of two ways. OMI Holdings, Inc., 149 F.3d at 1091. First, a plaintiff may show that there is specific jurisdiction over a nonresident defendant that has purposefully directed its activities at the forum state "and that the litigation results from alleged injuries that 'arise out of or relate to' those activities." Id. (quoting Burger King Corp., 471 U.S. at 472). Second, a plaintiff may show that there is general personal

jurisdiction based on the defendant's "continuous and systematic" business contacts with the forum state, regardless of whether the litigation is related to such activities. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). Both specific and general jurisdiction are present in this case.

**a. The Court Has Specific Personal Jurisdiction Over Edwards Because Edwards Purposefully Caused Injuries While in Colorado**

A court may assert specific jurisdiction over a nonresident "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp., 471 U.S. at 472 (internal citations omitted). The issue here is whether Edwards could "reasonably anticipate being haled into court" in Colorado. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 580, 62 L. Ed. 2d 490 (1980). Edwards should reasonably anticipate suit in Colorado because Trimarco's claims arise out of or result from "actions by the defendant himself that create a substantial connection with the forum state." Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 109, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

Edwards admits in the Settlement Agreement underlying the instant dispute, that he acted in his capacity as an agent and shareholder/trustee of Colorado corporations DishNetwork and EchoStar LLC, together with other executives of DishNetwork and Colorado residents. Edwards admits that he and these other Colorado citizens committed acts that damaged Trimarco, including wrongfully breaching and terminating contracts made with Trimarco and Trimarco's associated entities. Indeed, the Settlement Agreement released these Colorado individuals and entities.

Edwards should reasonably expect to be haled into court in Colorado, because, while acting as an agent and shareholder/trustee of multiple Colorado corporations, he committed significant wrongful acts against Trimarco. Furthermore, Edwards' acts were so damaging to Trimarco that

"there is no need to engage further in a minimum contacts analysis, because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction." First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC, 166 P.3d 166, 174 (Colo. App. 2007), as modified on denial of reh'g (June 14, 2007).

**b. The Court Has General Jurisdiction Over Edwards Because of His Continuous and Systematic Business Contacts With Colorado**

In addition to specific jurisdiction, Edwards is also subject to jurisdiction in Colorado based on principles of general jurisdiction. Where the defendant's activities at issue in the lawsuit do not give rise to specific jurisdiction, a court may nonetheless maintain general jurisdiction based on the defendant's general business contacts with the state. See Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 415. Edwards is subject to general jurisdiction based on his continuous and systematic general business contacts with Colorado at the time the events giving rise to the instant litigation occurred. See, e.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996). As late as April 27, 2012, Edwards admitted to being an agent and "major shareowner/trustee" of at least two Colorado business entities: DishNetwork and EchoStar LLC. In 2017, Edwards testified before a Colorado court adjudicating his mother's continued custody of his daughter. Furthermore, Edwards founded at least two Colorado corporations: Mr. & Mrs. Nice Guy and Mrs. Nice Guy. Edwards also maintains a trust fund in Colorado with substantial assets.

**2. The Exercise of Personal Jurisdiction Over Edwards is Reasonable**

In order to defeat personal jurisdiction here, Edwards would have to make a compelling showing that the exercise of jurisdiction would be unreasonable. Burger King Corp., 471 U.S. at 477. Edwards' evidence must show that the following factors make jurisdiction in Colorado

unreasonable: the burden on the defendant; the interest of the forum state; the plaintiff's interest in obtaining relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the several states in furthering fundamental substantive social policies. Asahi Metal Industry Co., 480 U.S. at 113.

While the reasonableness element of personal jurisdiction is separate and distinct from the minimum contacts element, the two components are related in as much as "both originated in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend 'traditional notions of fair play and substantial justice.'" Metropolitan Life Ins. Co., 84 F.3d at 568 (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). Where, as here, the minimum contacts element of the due process inquiry is particularly strong, the weight given to the reasonableness inquiry is diminished. Id. Because Trimarco has shown that there are substantial contacts between Edwards and Colorado, the Court need not give substantial weight to the reasonableness factors in determining that Edwards is subject to personal jurisdiction in Colorado. Nonetheless, these factors show that it is not unfair or unjust to find personal jurisdiction is proper in Colorado.

**a. Asserting Personal Jurisdiction Over Edwards Does Not Unduly Burden Him**

Edwards is not burdened by defending this cause of action in Colorado. Here, Edwards voluntarily negotiated and entered into a binding contract resolving a dispute over damaging acts he committed in Colorado. Furthermore, Edwards regularly travels to Colorado to visit his parents and daughter. Accordingly, this factor does not weigh in Edwards' favor.

**b. Colorado is Interested in Furthering Convenient and Effective Relief and Efficient Resolution of the Controversy**

Here, this Court's exercise of personal jurisdiction recognizes Colorado's strong interest in redressing the injuries inflicted in the state by the purported out-of-state actor's wrongful

conduct and breach of contract. Further exercising jurisdiction here supports Colorado's significant interest in applying Colorado law. As a result, this factor weighs in favor of the Court exercising jurisdiction.

**c. Trimarco's Interest in Convenient and Effective Relief**

Trimarco has a significant interest in the ability to seek recourse in the United States for damages to him that occurred on account of Edwards' actions. Because the acts underlying the dispute occurred in Colorado, where the vast majority of evidence and witnesses are located, Trimarco has a significant interest in adjudicating this dispute in Colorado.

**d. The Interstate Judicial System's Interest in Obtaining Efficient Resolution Favors Personal Jurisdiction in Colorado**

Colorado is the most efficient place to litigate this dispute. Key considerations under this factor include the location of witnesses and the substantive law governing the case. OMI Holdings, Inc., 149 F.3d at 1097. The evidence and witnesses to the actions underlying this dispute are in Colorado, thus making Colorado the forum providing the most efficient resolution of the case. Edwards' assets, sufficient to satisfy the amount due under the Loan, are located in Colorado.

**e. Personal Jurisdiction in Colorado Will Further Fundamental Substantive Social Policies**

This factor analyzes whether the exercise of personal jurisdiction by the forum state would affect the substantive social policy interests of other states or foreign nations. See OMI Holdings, Inc., 149 F.3d at 1097. Edwards has failed to disclose his current location, or suggest any more convenient forum in which to resolve this dispute. Colorado has an interest in resolving disputes that arise within its borders and permitting redress for the resulting injuries, and, accordingly, this factor weighs in favor of this Court's exercising jurisdiction.

**C. If This Court Finds That Edwards Was Not Properly Served, it Should Authorize Substituted Service**

Colorado Rule of Civil Procedure 4(f) reads:

> In the event that a party attempting service of process by personal service under section (e) is unable to accomplish service, and service by publication or mail is not otherwise permitted under section (g), the party may file a motion, supported by an affidavit of the person attempting service, for an order for substituted service. The motion shall state (1) the efforts made to obtain personal service and the reason that personal service could not be obtained, (2) the identity of the person to whom the party wishes to deliver the process, and (3) the address, or last known address of the workplace and residence, if known, of the party upon whom service is to be effected.
>
> If the court is satisfied that due diligence has been used to attempt personal service under section (e), that further attempts to obtain service under section (e) would be to no avail, and that the person to whom delivery of the process is appropriate under the circumstances and reasonably calculated to give actual notice to the party upon whom service is to be effective, it shall:
>
> (1) authorize delivery to be made to the person deemed appropriate for service, and
>
> (2) order the process to be mailed to the address(es) of the party to be served by substituted service, as set forth in the motion, on or before the date of delivery. Service shall be complete on the date of delivery to the person deemed appropriate for service.

Trimarco served Edwards at his Lakeshore Drive Address where his parents and daughter reside. The two affidavits of Plaintiff's process server submitted in this case demonstrate that Trimarco attempted personal service. As is evidenced by his opposition, Edwards effectively received notice of the dispute, and failed to disclose where he currently is located, or a better place at which to be served. In light of the above, should the Court determine that Edwards was not already personally served, Trimarco respectfully requests that the Court authorize service at the

Lakeshore Drive Address upon a member of Edwards' family: a method of service that has already proved to effectively put Edwards on notice of the instant dispute.

**D. If This Court Finds That Edwards Was Not Properly Served, it Should Allow Extra Time for Service**

Fed. R. Civ. P. 4(m) provides:

> Time Limit for Service If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. **But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.** This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).
> (Emphasis added).

"If good cause is shown, the plaintiff is entitled to a mandatory extension of time" under Rule 4(m). Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995). A defendant's deliberate evasion of service constitutes good cause. Cox v. Sandia Corp., 941 F.2d 1124, 1125 (10th Cir. 1991)("The legislative history of the Rule cites a defendant's evasion of service as the sole example of 'good cause.'") Even when good cause is not shown, a court may, in its discretion, extend the time for service beyond 120 days. Id.

Here, if Edwards was not actually served in-hand, at a minimum there is evidence that he is deliberately evading service. As discussed above, McAdam's deliberate misidentification of himself to the process server, as well as Edwards' significant silence on his current whereabouts, the residence of his daughter at the Lakeshore Drive Address, and that he is registered to vote in Colorado are evidence of evasion. See Rosa, 705 F.2d at 1216, Kenworthy, 71 Misc. 2d at 953.

Accordingly, if the Court finds Edwards was not properly served[1], it must grant Trimarco an extension of time to serve Edwards.

**CONCLUSION**

For the reasons stated above, Trimarco respectfully requests that this Court issue an Order denying Edwards' Motion to Quash Service of Process and to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(5), or, in the alternative, issue an Order authorizing substituted service, as is allowed by Colorado Rule of Civil Procedure 4(f) and extending time to perfect service under Fed. R. Civ. P. 4(m).

Dated: New York, New York
March 28, 2018

*/s/ Howard Kleinhendler*
Howard Kleinhendler
Jocelyn Weinstein
WACHTEL MISSRY LLP
885 Second Avenue
New York, NY 10017
(212) 909-9500
(212) 909-9430 (fax)
kleinhendler@wmllp.com
jweinstein@wmllp.com
*Counsel for Plaintiff*
*Michael Trimarco*

[1] Should the Court deny Trimarco's motion for substituted service at Edwards' childhood home, Trimarco requests the opportunity to depose Edwards' mother, Cantey Ergen, to determine Edwards' whereabouts.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of March, a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss, or, in the Alternative, Cross-Motion for Alternative Service and an Extension of Time was served on the following by electronic filing:

Hugh Q. Gottschalk
Wheeler Trigg O'Donnell, LLP-Denver
370 17th Street
Suite 4500
Denver, CO 80202-5647

*/s/ Howard Kleinhendler*
Howard Kleinhendler